# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LESTER INGRAM,**

        **Plaintiff,**

**v.**                                             **Case No. 04-CV-131**

**MILWAUKEE AREA TECHNICAL COLLEGE,**
**DARNELL E. COLE,**
**JOSE A. OLIVIERI,**
**PETER G. EARLE,**
**MARK S. MAIERLE,**
**LAUREN BAKER,**
**CARL A. GOBEL, and**
**JEANNETTE BELL,**

        **Defendants.**

## DECISION AND ORDER

This matter comes before the Court on the defendants' motion to dismiss pursuant to a settlement agreement. For the following reasons, the defendants' motion is denied, and a scheduling conference will be slated to adjust the litigation schedule.

## FACTS

The plaintiff, Lester Ingram, was terminated from his employment with Milwaukee Area Technical College (MATC) on January 9, 2003. (Amended Complaint at ¶ 41; Answer to Amended Complaint at ¶ 41.) Following his termination, Ingram filed suit against various

board members and employees of MATC (collectively "the defendants") in the circuit court of Milwaukee County, alleging that MATC breached its employment contract with Ingram and unlawfully deprived him of his rights under 42 U.S.C. §§ 1983 & 1985. (Complaint at ¶¶ 56-84.) The matter was removed to federal court on February 4, 2004.

From December 2004 to February 2005, Ingram's attorney, Robert Haney, and the defendants' lead attorney, James Ruhly, engaged in settlement discussions. (Ruhly Aff. at ¶¶ 5-8.) After apparently reaching a tentative, oral agreement, Ruhly faxed Haney a letter on February 22, 2005, outlining the terms of which they "tentatively settled" the case. (*Id.* at ¶ 22, Ex. L.) According to Ruhly's February 22 letter, the parties "tentatively" agreed to settle the case for $105,000, allocating $35,000 to attorneys fees, $15,000 to wages, and $55,000 to compensatory damages. (*Id.* at Ex. L.) Ruhly's letter also specified other terms, including a neutral reference letter, dismissal of the instant lawsuit, a comprehensive release, and an agreement by Ingram not to seek work with MATC in the future. (*Id.* at Ex. L.) Ruhly said in his letter that the MATC Board would "be informed of this outline of terms on February 22, 2005," and that a "final written agreement will be subject to approval by the Board." (*Id.* at Ex. L.)

That same day, Haney responded by faxing Ruhly a copy of Ruhly's February 22 letter with certain changes made in handwriting and initialed by Haney. (*Id.* at Ex. L.) Specifically, Haney made the following written changes, all of which were accompanied by his initials: (1) the amount of attorneys fees was changed from $35,000 to $40,000; (2) the words "and expenses" were added to the attorney fees provision; (3) the compensatory damages allocation

was changed from $55,000 to $50,000; and (4) the time to designate the specific annuity was increased from 30 to 60 days. (*Id.* at Ex. L.) That evening, the MATC Board of Directors "were in agreement that the terms of the settlement were acceptable," and authorized that a written settlement agreement be prepared. (Falkenberg Aff. at ¶ 6.)

Three days later, on February 25, Ruhly faxed Haney a letter stating that all of Haney's proposed changes were "acceptable to the Defendants," and that he would "prepare the written agreement of release and waiver." (Ruhly Aff. at ¶ 25, Ex. N.) On March 7, 2005, Ruhly faxed Haney a document entitled "Settlement Agreement with Comprehensive Release and Waiver," ("Agreement"), which was accompanied by a cover letter by Ruhly. (*Id.* at ¶ 26, Ex. O.) In the cover letter, Ruhly told Haney that "[i]f it meets with your approval, you and Mr. Ingram should sign all four copies and return them to me." (*Id.* at Ex. O.) Ruhly said that after Haney and Ingram signed the Agreement, he would then "secure MATC's signatures." (*Id.* at Ex. O.)

The Agreement included a provision stating that Ingram had "twenty-one (21) days to review and consider [the] Agreement." (*Id.* at Ex. O.) It also provided that Ingram had "seven (7) days following his signing of [the] Agreement during which he may revoke" the Agreement. (*Id.* at Ex. O.) If Ingram chose to revoke within seven days after signing the Agreement, he would "not receive any of the consideration outlined" in the Agreement – that is, he would not receive the $105,000 settlement amount. (*Id.* at Ex. O.) The Agreement also stated that it would "not be effective and enforceable until the eighth (8th) day after the date Ingram signs the Agreement." (*Id.* at Ex. O.)

On March 31, 2005, Ruhly had not yet received signed copies from Haney and Ingram. (*Id.* at ¶ 28.) When Ruhly inquired as to the status of the matter, Haney told Ruhly that Ingram wanted changes to the reference letter. (*Id.* at ¶ 28.) Haney then faxed Ruhly proposed changes to the reference letter. (*Id.* at ¶ 28.) The following day, on April 1, Ruhly faxed Haney a letter saying that the revised reference letter that Ruhly sent him was acceptable to the defendants. (*Id.* at ¶ 29, Ex. Q.)

On April 11, 2005, after still not receiving the signed Agreement from Ingram and Haney, Ruhly called Haney again to inquire. (*Id.* at ¶ 30.) Haney told Ruhly that after reviewing the Agreement, Ingram decided that he was not going to sign it because he wanted to settle the case for more money. (*Id.* at ¶ 30.) Haney said he would try again to secure Ingram's signature of the Agreement (*Id.* at ¶ 30), which he failed to do. (*Id.* at ¶ 32.) The defendants then filed a motion to dismiss pursuant to a settlement agreement.

## DISCUSSION

The Court has inherent authority, as the supervisor of the litigation, to enforce and interpret settlement agreements reached by the parties in litigation before it. *See Hakim v. Payco-General Am. Credits, Inc.*, 272 F.3d 932, 935 (7th Cir. 2001). Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law. *See Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000) (applying state contract law to a settlement agreement in a case that involved only federal claims). All of the events surrounding the formation of the settlement agreement occurred in Wisconsin; thus Wisconsin law controls. *See Sims-Madison v. Inland Paperboard & Packaging, Inc.*,

379 F.3d 445, 448 (7th Cir. 2004).

Wisconsin law provides that a settlement agreement entered into during the course of litigation must be "made in writing and subscribed by the party to be bound thereby or the party's attorney." WIS. STAT. § 807.05. This statutory requirement is in the nature of a statute of frauds, and thus, is an exception to the usual rule that oral contracts are binding. *See Adelmeyer v. Wisconsin Elec. Power Co.*, 135 Wis.2d 367, 369 (Ct.App. 1986).

Ingram agrees with the defendants that a final agreement was reached but only after MATC accepted Ingram's proposed changes to the reference letter on April 1, 2005. Ingram then argues that he exercised the right that existed in the agreement to rescind it and is now free of any obligation thereunder. The claim of Ingram and the defendants that any agreement existed is clearly unsupportable. Wisconsin law requires that the settlement be "subscribed by the party . . . or the party's attorney." WIS. STAT. § 807.05. Indeed, the Agreement explicitly stated that it "will not be effective and enforceable until the eighth (8th) day after the date Ingram *signs* the Agreement." (emphasis added) (Ruhly Aff. at ¶ 26, Ex. O.) It is without dispute that no one ever signed the Agreement. Thus, Ingram's claim that there was an enforceable agreement on April 1, 2005, must be rejected.

Despite the clear standard outlined above, the defendants in turn argue that there was an enforceable settlement agreement on February 25, 2005, after Ruhly sent Haney a letter saying that the changes proposed by Haney were "acceptable to the Defendants." (*Id.* at ¶ 25, Ex. N.) In his February 25 letter, Ruhly outlined the terms that Haney changed, and then Ruhly wrote that the "remaining terms outlined by my letter [of February 22] are unchanged."

(*Id.* at Ex. N.) One of the terms in Ruhly's February 22 letter was that "[a] final written agreement will be subject to approval by the Board." (*Id.* at ¶ 22, Ex. L.) The MATC Board, though, never had an opportunity to approve the *final* written agreement because Ingram never signed it. The February 25, 2005, agreement was a conditional one, and the condition never occurred. Thus, there is no binding settlement agreement.

Indeed, this interpretation is supported by the wording of the Agreement and subsequent actions of the parties. On March 7, 2005, in Ruhly's cover letter that accompanied copies of the Agreement, Ruhly said that Haney and Ingram should sign the Agreement "[i]f it meets with your approval," which suggests that Haney and Ingram were still free to *not* approve the Agreement. (*Id.* at Ex. O.) Furthermore, the Agreement itself states that if Ingram chose to revoke the Agreement within seven days after signing the Agreement, he would "not receive any of the consideration outlined in the Agreement," which would include the $105,000 settlement amount. (*Id.* at Ex. O.) If Ingram would not receive the consideration if he chose to revoke *after* he signed the Agreement, it makes little sense to force him to accept the consideration when he never signed the Agreement in the first place.

The defendants' position is that Ingram had no choice but to accept the terms of the Agreement because he was already bound by the letters exchanged by Haney and Ruhly in February 2005. Yet, the written Agreement itself allows Ingram to revoke the settlement agreement all together, and receive no consideration at all, by revoking within seven days after he signed the Agreement. If Ingram can avoid being bound by the settlement agreement *after* he signed the Agreement, he surely can avoid being bound by never signing the

Agreement in the first place. Thus, there is no settlement agreement for the Court to enforce.

Both parties agree that a scheduling conference is necessary to adjust the litigation schedule. Currently, a pretrial conference is scheduled for September 16, 2005, and the trial is scheduled to begin October 17, 2005. The Court will convert the pretrial conference call scheduled for September 16, 2005, to a scheduling conference to reschedule the pretrial conference and trial dates.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

The Defendants' Motion to Dismiss Pursuant to Settlement Agreement is **DENIED.**

The pretrial conference call that is scheduled for September 16, 2005, at 10:00 a.m., is hereby converted into a scheduling conference to reschedule the final pretrial conference call and trial dates. The Court will initiate the call.

Dated at Milwaukee, Wisconsin this 31st day of August, 2005.

**SO ORDERED**

**s/ Rudolph T. Randa**
**Hon. Rudolph T. Randa**
Chief Judge